IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 24-21-H-BMM |
| Plaintiff, | |
| vs. | ORDER |
| JULIE ANN BROWN, | |
| Defendant. | |

## INTRODUCTION

Defendant Julie Ann Brown ("Brown") filed a motion for compassionate release on November 4, 2025. (Doc. 45.) Brown's counsel filed a supplemental brief in support of Brown's motion on January 5, 2026. (Doc. 48.) Brown argues that she presents extraordinary and compelling reasons for a sentence reduction because she is the only available caregiver for her 15-year-old daughter who has severe medical conditions, and Brown herself suffers from several medical issues. (*Id*. at 3-4, 7.) Brown contends that these facts constitute extraordinary and compelling reasons for a sentence reduction to time served plus a period of supervised release. (*Id.*) The Government opposes Brown's motion. (Doc. 52 at 2.) The Government argues that Brown has not provided extraordinary and compelling reasons to justify a sentence reduction. (*Id.*)

## FACTUAL BACKGROUND

1

A grand jury indicted Brown on August 28, 2024, for ten counts including nine counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. (Doc. 1.) The indictment also included a forfeiture allegation pursuant to 18 U.S.C. § 982(a). (*Id.*) Brown entered a guilty plea to Count 9 and Count 10 of the indictment on March 3, 2025, which included one count of wire fraud and one count of engaging in monetary transactions in property derived from specified unlawful activity. (Doc. 27.) Pursuant to the plea agreement, Counts 1 through 8 were dismissed. (*Id.*)

Brown's offense level was 17 and her criminal history score placed her in category I. (PSR at ¶¶ 38, 43.) Browns advisory guideline imprisonment range was 24 to 30 months. (*Id*. ¶ 73.) The Court sentenced Brown on July 14, 2025, to the custody of the Bureau of Prisons ("BOP") for 12 months and one day. (Doc. 42.) Brown was further sentenced to 3 years supervised release. (*Id.*)

Brown has served approximately five months of her 12-month term of imprisonment. Brown's projected release date is April 26, 2026. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed January 30, 2026). Brown is incarcerated at Victorville Medium I FCI in Victorville, California. *Id.*

## DISCUSSION

I.  **Availability of Relief Under 18 U.S.C. § 3582**

The First Step Act amended the United States Code to "promote rehabilitation

of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy

Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide as follows:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

> . . .
>
> (B) The defendant is—
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . .

(5) Other Reasons.—The defendant presents any other circumstance or

      combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3.

      The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This provision recognizes that "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983)). USSG § 1B1.13(b).

    **A. Exhaustion of Remedies**

Brown appropriately exhausted her administrative remedies as required before filing his motion for compassionate release. Brown contacted the warden at Victorville FCI on September 28, 2025, requesting consideration for compassionate release. (Doc. 45 Ex 1.) Brown reports that she has not received a response from the warden. (Doc. 48 at 6.) Brown has exhausted her administrative remedies, as more than 30 days have elapsed since the warden received her request. 18 U.S.C. § 3582(c)(1)(A).

## B. Reason for Reduction

### a. Caregiver Issues

Brown is 41 years old. (PSR at 2.) Brown's daughter, Tye (15 years old), has severe medically refractory epilepsy and comorbid anxiety. (*Id.* ¶ 50.) Tye underwent a vagus nerve simulator implantation on April 24, 2020. (*Id.*) Tye currently takes daily anti-seizure medications. (*Id.*) Tye is currently required to travel to the Neurology Clinic at the Seattle Children's Hospital approximately once a year. (*Id.*) Tye was taken out of school in the 6th grade due to her condition and Brown has homeschooled Tye since then. (*Id.* ¶ 51.) Tye does her homeschooling through an online program and cannot be left alone other than for short periods of time. (*Id.* ¶ 52.) Tye's seizures can last for up to half an hour. (*Id.*)

Brown asserts that Tye requires full-time care, and that Brown is the only caregiver because her husband (Tye's father) works full-time. (Doc. 45 at 1.)

Brown's husband, Mr. Brown, reports that he is currently not working because "all work offered at the time requires travel." (*Id*. at 8, Ex. Update Email.) Mr. Brown reports that he cannot travel out-of-town for work because he cannot leave Tye alone for long periods of time. (*Id*. at 7-8.) Mr. Brown's purported inability to work jeopardizes the family's financial well-being and potentially, their access to healthcare as well. (*Id*.) Brown also still owes over $45,000.00 in restitution. (*Id*. at 9.) Brown concedes that there has been no death or incapacitation of another caregiver as contemplated in USSG § 1B1.13(b)(3)(A). (*Id*.)

### b. Medical Condition

Brown also argues that her own medical conditions contribute to the extraordinary and compelling reasons to grant her motion for compassionate release. (*Id*.) Brown asserts that she has connective tissue disorder, particularly impacting her left index finger. (*Id*. Ex. 1 at 2.) Brown also suffers from hypertension and autoimmune disorder, among other conditions. (*Id*. at 8.) Brown contends that her mental health medications and chronic pain medications are not being administered by the Bureau of Prisons. (*Id*.) Brown had been prescribed Xanax, Hydrocodone, Bupropion, Hydrochlorothiazide, Trazodone, Meclizine and Zofran, before custody. (PSR ¶ 55.) Several medications have been provided to Brown at BOP though certain medications may have been changed in form or dosage. (Doc. 48 at 8.) Brown does not assert, or provide any evidence, that her conditions are terminal pursuant to

USSG §1B1.13 (b)(1)(A). Brown does not assert, or provide any evidence, that she cannot care for herself in a custodial setting pursuant to USSG §1B1.13 (1)(A)(ii). Brown further does not assert, or provide any evidence, that she cannot care for herself or her conditions cannot be managed in a custodial setting pursuant to USSG §1B1.13 (1)(A)(ii). Brown also does not provide evidence that her medical condition is substantially deteriorating while incarcerated.

The Court has empathy for the challenging situation Brown and her family are experiencing. Brown's daughter's serious health issues are concerning and clearly require intensive care. The Court considered the health conditions of Brown and her daughter in Brown's sentencing. Brown's guideline range for sentencing was 24 to 30 months imprisonment. (PSR ¶ 73.) The Court sentenced Brown to only 12 months and one day, partially in consideration of the circumstances Brown detailed above. (Doc. 42 and Doc. 43.) The Court finds that Brown's caregiver issues and medical needs do not qualify as an "extraordinary and compelling reason" to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and USSG §1B1.13(b)(1).

   c. **Brown's Release Plan**

Brown asks the Court for a sentence reduction to time served. (Doc. 45.) Brown asserts that if the Court releases Brown from custody, she will still have three years of supervised release. (*Id.*) Brown argues that if released, she would return

home to Helena to care for her home and family. (*Id*. at 6.)

### d. The 18 U.S.C. § 3553(a) factors

Brown argues that, in light of her daughter's conditions and her own medical issues, she has served a sentence that reflects the seriousness of her offense, promotes respect for the law, and fulfills the need for just punishment. (*Id*. at 6 citing 18 U.S.C. §3553(a)(1) (a)((2)(A).)

Brown concedes that her offense was serious. (Doc. 48 at 10.) Brown took advantage of her position as a bookkeeper for a small business and overpaid herself and used the business's funds to pay for her personal expenses. (PSR ¶ 7-22.) Brown took funds to pay her energy bills, construction loans, personal expenses, and to purchase horses. (*Id*.) Brown also used the stolen funds to help pay medical bills. (*Id*.) Brown owed $192,893.48 to the business she stole from. (*Id*.) Brown sold her house and paid a total sum of $214,748.97 in settlement, with $147,884 going to the business, and the remainder in attorney fees to the business's counsel. (*Id*.) Brown still owes over $45,000 in restitution. (Doc. 48 at 9.) The Court finds that a 12-month and one day term of imprisonment is just punishment for Brown's offense and is necessary to assist in deterrence, to promote respect for the law, and to protect the public.

## CONCLUSION

The Court finds that Brown's medical issues and her daughter's medical

conditions do not rise to the level of extraordinary and compelling circumstances warranting a sentence reduction. The Court was aware of Brown's daughter's health conditions before sentencing. The Court understands the difficulties involved in ensuring Tye receives the necessary care, but Brown has not demonstrated that the situation presents extraordinary and compelling circumstances warranting a sentence reduction.

The Court finds that Brown's medical problems do not prevent her from being able to care for herself within a prison setting. The Court finds that Brown has presented insufficient evidence that the medical care provided to her by the Bureau of prisons proves inadequate at this time. The Court agrees with the Government that the severity and seriousness of Brown's crime warrant a 12-month and one day sentence.

For these reasons, the Court will not reduce Brown's sentence. The Court informs Brown that she may file a new request should her or her daughter's health conditions substantially deteriorate.

## ORDER

Accordingly, **IT IS ORDERED** that Brown's motion for compassionate release (Doc. 45) is **DENIED.**

DATED this 4th day of February, 2026.

_____
Brian Morris, Chief District Judge
United States District Court